### GENERAL INSURANCE CO. OF AMERICA v. CHRISTIANSEN FURNITURE CO.

No. 7459. Decided March 20, 1951. (229 P. 2d 298.)

See 46 C. J. S. Insurance, Sec. 1212.    Rent, fire destroying premises as affecting liability for, see note, 118 A. L. R. 106.    See, also, 32 Am. Jur. 402.

*Skeen, Thurman & Worsley,* Salt Lake City, for appellant.

*F. R. Bayle,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff sued under a subrogation agreement to collect rent for a period of two months during which defendant remained in possession of leased premises following partial destruction of the premises by fire. From a judgment in favor of plaintiff, defendant appeals.

The Rental Investment Company rented to defendant corporation a store building at 66 South Main Street in Salt Lake City, on a month-to-month basis, at $850 per month. It also rented to defendant corporation a warehouse at the rear for $125 per month. Plaintiff insured said Rental Investment Company against loss of rentals.

On May 2, 1946, the furniture store was partially destroyed by fire. The office was damaged to such an extent that the records and other equipment had to be moved, and they were taken over to the warehouse building on Richards Street. Some of the furniture burned, and other furniture was damaged by smoke. It was apparent at once that extensive repairs would have to be made to restore the building to the condition which existed prior to the fire which would necessitate vacating the premises. However, the defendant did not vacate the premises, but remained in possession during May and June, and during the latter part of June conducted a fire sale. During said period of two months customers were invited to come to the store and make payments on accounts and contracts.

Appellant furniture company contends that it was not liable for rent during the period it remained in possession, since the Rental Investment Company, assignor of plaintiff, requested it to remain there while the insurance loss claims were being adjusted; but in the event it should be determined that appellant was liable, it could only be liable for the reasonable rental value and not for the full monthly rent it had previously paid on a month-to-month basis.

Respondent argues that while the Rental Investment Company and the Christiansen Furniture Company are separate corporations, they are controlled by practically the same people, the president and secretary being the same persons in both corporations. One brother is vice president of one corporation, while another brother in the Christiansen family is vice president of the other company. There was no formal meeting of the board of directors of either corporation held to make any agreement claimed by the president to have been made, and he admitted that he made the decisions for both companies after discussing the matter with some of the local directors. It is admitted that the claim filed with plaintiff for loss of rental income included the months of May and

June, 1946, and the sum of $4,000 paid in compromise of the rental loss claim included the unpaid rent for those two months. At the time of such settlement, the Rental Investment Company, pursuant to a provision of the insurance contract, executed a subrogation agreement, by the terms of which it is stated:

"* * * the undersigned hereby assigns and transfers to the said Company each and all claims and demands against any other party, person, persons, property or corporations, arising from or connected with such loss and damage, and the said Company is hereby subrogated in the place of and to the extent of the amount above named, and the said Company is hereby authorized and empowered to sue, compromise or settle in its name or otherwise, to the extent of the money paid as aforesaid.

"The undersigned covenants that it has not released or discharged any such claim or demand against such party or parties, and that it will furnish said Company any and all papers and information in its possession, necessary for the proper prosecution of such claim."

In view of the covenant and representation that Rental Investment Company had not released nor discharged any claim, the court was entitled to disregard the testimony of the president of said company to the effect that it was understood that the furniture company would not pay any further rent until the reconstruction and remodeling of the premises, since he was the officer who executed said subrogation agreement for his company. Furthermore, it was obvious that the work of reconstruction could not commence while the defendant remained in possession.

In the absence of a statute or some term of the lease providing for discharge of the liability of the tenant to pay rent, the common law rule is to the effect that where the tenancy includes land together with improvements thereon, the complete destruction of the improvements does not discharge the covenant to pay rent. See 2 Underhill, Landlord and Tenant, p. 1338. The facts of this case do not invoke a discussion of whether or not there should be a relaxation of the common law rule; for

here there was no substantially complete destruction of the premises. Indeed, defendant continued to occupy and use the damaged building.

Since the tenancy was from month-to-month and not on a written lease, the tenant could have vacated following the fire and could have relieved itself of liability to pay rent bceause of the partial destruction of the premises by fire. Apparently, the officers of defendant corporation considered it to the advantage of the furniture company to remain in possession, until after the holding of the fire sale, which did not take place until 7 weeks after the fire. The holding over by a tenant after the end of the rent month renders the tenant liable for rent for the succeeding month. The defendant was liable in any event for rent for the month of May, and it continued in possession during June until after the fire sale was held. It required only several days to move, but defendant posted a sign on the front door showing that the store was open for payment of accounts and contracts.

It was doubtless within the power of the Rental Investment Company to enter into an agreement for a modification of the tenancy at a lower rental, but the fact that it made a claim for insurance loss on the basis of $850 per month including the months of May and June, tends to refute the contention that the tenant, if liable for any rent at all, was entitled to remain in possession on a reduced rental basis. No rent at all was paid, but if there had been any liability for rent on a reduced rental basis because of the fire damage, there could have been no valid basis for an insurance claim for loss of rental of $850 per month, since the loss would be only the difference between the rental then payable and the amount which had been payable prior to the fire. The president and secretary who served the landlord corporation, also functioned in the same capacity for the tenant corporation. In presenting a claim on behalf of the landlord, they represented

that no party had been released from any claim or demand. The only party which could have been referred to would have been the tenant which had been paying rent, and which remained in possession for two months without payment of any rent.

The defendant denied liability in this action for rent on the theory that there was a fire which rendered the premises wholly untenantable. If it had entertained such view, it should have vacated the premises as expeditiously as possible. Instead, it carried on business transactions in the damaged store for two months. The holding over for the period of two months necessarily delayed commencement of reconstruction and consequently such a situation would not appear to be in the interest of the landlord. The president of the two corporations testified that after the fire the defendant corporation remained in possession by request as a "watch-dog." However, there appears to be no reason why the landlord should have any duty to provide a nightwatchman to guard the personal property in the possession of the tenant. Although the president of the two corporations testified that the furniture company remained in possession at the request of the insurance adjuster, there is an implausible explanation of a two-month period of occupancy. Furthermore, none of the adjusters to whom such a request had been attributed was called as a witness to so testify. The circumstances in this case were such that the trial court was justified in concluding that the tenant held over for two months because it deemed such a course of conduct to be to its own advantage, and that there was no actual modification of the tenancy or the liability to pay rent.

The judgment of the district court is therefore affirmed, with costs to respondent.

WOLFE, C. J., and WADE, LATIMER and CROCKETT, JJ., concur.